Gregory B. Collins (#023158)
Jenessa G. B. Coccaro (#027090)
KERCSMAR & FELTUS PLLC
6263 North Scottsdale Road, Suite 320
Scottsdale, Arizona 85250
Telephone: (480) 421-1001
Facsimile:  (480) 421-1002
gbc@kflawaz.com
jbc@kflawaz.com

Attorneys for Plaintiff ThermoLife International LLC

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ThermoLife International LLC, an Arizona limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>Pure Assay Ingredients Inc., a California corporation,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

Plaintiff ThermoLife International LLC, for its complaint against defendant Pure Assay Ingredients Inc. (hereinafter "Pure Assay"), alleges upon personal knowledge with respect to itself and its own acts, and upon information and belief with respect to all other matters, as follows:

## NATURE OF ACTION

1. Plaintiff ThermoLife International LLC ("ThermoLife") brings claims for patent infringement, inducement of patent infringement, and contributory patent infringement against its competitor Pure Assay.

2. Pure Assay is openly violating ThermoLife's U.S. Patent No. 7,777,074 (the " '074 Patent"), which protects an Amino Acid Compound consisting of essentially a

nitrate or nitrate of an Amino Acid selected from a group consisting of Beta Alanine, Citulline, Leucine, and Isoleucine (hereinafter, this group of amino acids is collectively referred to as the "Nitrates of Amino Acid"). As stated in the '074 Patent, the Nitrates of Amino Acid effectively increase vasodilatation in humans, and are, therefore, desirable additives to dietary supplements for athletes and others. A true and accurate copy of the '074 Patent is attached as Exhibit A.

3. Competition in the dietary supplement industry is fierce, with each company seeking to discover and market the next breakthrough product that will help build muscle and/or decrease fat. Faced with stiff competition and the ever-increasing desire of the market for the next great muscle building supplement, dietary supplement makers frequently copy the successful products and ingredients offered by other makers, even if protected by United States patent laws.

4. In this case, Pure Assay has copied ThermoLife's products and ThermoLife's innovative technology. In direct infringement of the '074 Patent, Pure Assay sold and marketed Citrulline Nitrate for use in dietary supplements.

5. ThermoLife brings this action to enjoin Pure Assay from continuing to violate the '074 Patent and to recover a reasonable royalty and treble damages for its lost sales resulting from defendant's willful infringement. In addition, Pure Assay should be made to disgorge its illegal profits made by violating ThermoLife's valid patent.

## PARTIES, JURISDICTION AND VENUE

6. Plaintiff ThermoLife is an Arizona limited liability company. ThermoLife's principal place of business is 3914 East Chandler Boulevard, Phoenix, Arizona 85048.

7. Pure Assay is a California corporation. Pure Assay's principal place of business is 4010 West Valley Boulevard, Suite 101, Walnut California, 91789.

8. Pure Assay ships and sells products nationwide, including in Arizona. Pure Assay's products, and the raw materials Pure Assay sells for inclusion in dietary supplements, are sold at stores like Nurtrishop. Nutrishop has three locations in Arizona.

9. Pure Assay advertises its products nationwide, including in Arizona.

10. The Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§1331 and 1338 because this action, at least in part, is for patent infringement and arises under the patent laws of the United States, Title 35, Section 271 *et seq*. of the United States Code.

11. This Court also has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because ThermoLife and Pure Assay are diverse in citizenship and the amount in controversy exceeds $75,000, exclusive of interests and costs.

12. Venue is proper in this District under 28 U.S.C. §1391(b)-(c), because a substantial part of the events or omissions giving rise to ThermoLife's claims occurred in this District. Venue with respect to Pure Assay is also proper in this district because Pure Assay is subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### A. ThermoLife

13. Ron Kramer ("Kramer") founded ThermoLife in 1998. Prior to founding ThermoLife, Kramer was a gym owner who had competed in bodybuilding and later promoted professional bodybuilding competitions for the International Federation of Bodybuilders.

14. Between 1994 and 1997, Kramer opened and operated a Gold's Gym in Santa Cruz, California.

15. During his time as a bodybuilder, promoter, and gym owner, Kramer discovered that many dietary supplements failed to meet any quality control standards.

Often supplements are spiked with hidden ingredients and labeled incorrectly. Many were ineffective.

16. At the time ThermoLife was established, few supplements were clinically researched or field tested. Even today, relatively few supplements have been proven to work as advertised.

17. In 1998, Kramer founded ThermoLife in order to provide the public with quality proven supplements. ThermoLife is committed to selling only the purest, most effective and innovative products.

18. By relying on supposedly proprietary formulas, supplement companies often hide the ingredients in their products from consumers. Unlike other supplement companies, ThermoLife develops unique and novel products and formulas that it fully discloses to the public. In this way, ThermoLife allows consumers to know exactly what products and raw materials they consume.

19. ThermoLife has been awarded patents on over twenty individual compounds. These patents protect ThermoLife's innovative and proven products from being copied by ThermoLife's competitors.

20. By fully disclosing its formulas and relying on scientifically proven and protected formulas and ingredients, ThermoLife has taken a lead role in ending the deceptive business practices that have plagued the supplement industry.

21. One of the patents owned by ThermoLife is U.S. Patent 7,777,074 (the "'074 Patent"). On August 17, 2010, the '074 Patent was duly and legally issued to Kramer, *et al*. ThermoLife is the assignee of all rights in and title to the '074 Patent.

22. ThermoLife's supplements are sold nationwide on the internet and in vitamin and dietary supplement stores such as The Vitamin Shoppe.

### B. Pure Assay's Infringement

23. Pure Assay's products are marketed and sold nationwide on the internet and through resellers.

24. Pure Assay sells raw materials and formulated products to dietary supplement companies for use in dietary supplements. Many of Pure Assay's products are sold and marketed for use in other companies' dietary supplements that are sold to consumers.

25. In early January 2012, ThermoLife's President Ron Kramer discovered that dietary supplement company Vita of America sold a dietary supplement that listed Citrulline Nitrate as an ingredient.

26. ThermoLife informed Vita of America that ThermoLife's '074 Patent prohibited the sale of Citrulline Nitrate unless the product was sourced from ThermoLife.

27. Vita of America informed ThermoLife that it had obtained the Citrulline Nitrate included in its products from Pure Assay.

28. Vita of America provided ThermoLife an invoice from Pure Assay for its purchase of Citrulline Nitrate. A true and accurate copy of the invoice is attached as Exhibit B.

29. The invoice attached as Exhibit B indicates that on September 22, 2011, Pure Assay accepted, filled and shipped an order from Vita of America for 50 units of Citrulline Nitrate.

30. Vita of America paid Pure Assay $3,900.00 for 50 units of Citrulline Nitrate.

31. Upon information and belief, Pure Assay has sold Citrulline Nitrate to other companies in the dietary supplement industry.

32. On or about January 10, 2012, Kramer contacted Pure Assay. Kramer informed Pure Assay that its advertisement and sale of Citrulline Nitrate infringed the '074 Patent.

33. Pure Assay refused to acknowledge the validity of the '074 Patent and refused to cease selling Citrulline Nitrate.

34. Notwithstanding Pure Assay's appreciation of the value and scope of the '074 Patent, Pure Assay has sold, manufactured, imported and/or used infringing Nitrates of Amino Acid (hereinafter "Infringing Products").

35. Pure Assay has manufactured and sold, and continues to manufacture and sell, Infringing Products.

36. Pure Assay's Infringing Products have at least one compositional feature corresponding to an Amino Acid Compound consisting essentially of a nitrate or nitrite of an Amino Acid elected from the group including the Nitrates of Amino Acid.

37. Pure Assay sells Infringing Products over the internet and elsewhere. Pure Assay seeks generally to sell Infringing Products to retailers, distributors, dealers, and/or the general public, including the general public in the State of Arizona and this District.

38. Despite notice of its infringing activity, Pure Assay has continued and continues its infringing activities to date.

39. The activities of Pure Assay with regard to its sales, importation, manufacture and/or use of the Infringing Products are and have been without authorization from ThermoLife.

## COUNT I — PATENT INFRINGEMENT

40. ThermoLife repeats and realleges each and every allegation contained in the foregoing paragraph of this Complaint, as if fully set forth herein.

41. This cause of action arises under the Laws of the United States, Title 35, United States Code, in particular under 35 U.S.C. § 271(a).

42. The '074 Patent is a valid and enforceable patent.

43. Defendant, acting through and by its respective officers and owners, have, without authority, consent, right or license, and in direct infringement of the '074 Patent,

imported, made, used, and/or sold Infringing Products in this country, and such Infringing Products have been sold and used in this jurisdiction and district.

44. Defendant's infringing conduct is willful, intentional and unlawful and, upon information and belief, will continue unless enjoined by this Court.

45. ThermoLife has no adequate remedy at law for the harm caused by defendant's acts.

46. By reason of defendant's acts complained of herein, ThermoLife has suffered monetary damages in an amount that has not yet been determined, but upon information and belief, is substantially in excess of the sum or value of $75,000, exclusive of interest and costs.

47. Due to the intentional nature of defendant's acts, this is an exceptional case in which ThermoLife is entitled to treble damages, attorneys' fees and costs pursuant to 35 U.S.C. §§284 and 285.

48. Pursuant to 35 U.S.C. §284, ThermoLife is entitled to: an accounting by Pure Assay's funds comprising all revenues received through the commercial exploitation of Infringing Products; the imposition of a constructive trust for the benefit of ThermoLife for all such funds in the custody or control of Pure Assay; and to such other damages to which ThermoLife may be determined to be entitled.

## COUNT II — INDUCEMENT OF PATENT INFRINGEMENT

49. ThermoLife repeats and realleges each and every allegation contained in the foregoing paragraph of this Complaint, as if fully set forth herein.

50. This cause of action arises under the Patent Laws of the United States, Title 35, United States Code, in particular under 35 U.S.C. §271(b).

51. The '074 Patent is a valid and enforceable patent.

52. Upon information and belief, Pure Assay, acting by and through its respective officers and owners, have, in this country, actively and/or intentionally

induced others to use and/or sell Infringing Products, in direct infringement of the '074 Patent.

53. Pure Assay's infringing conduct is willful, intentional and unlawful and, upon information and belief, will continue unless enjoined by this Court.

54. ThermoLife has no adequate remedy at law for the harm caused by Pure Assay's acts.

55. By reason of Pure Assay's acts complained of herein, ThermoLife has suffered monetary damages in an amount that has not yet been determined, but upon information and belief, is substantially in excess of the sum or value of $75,000, exclusive of interest and costs.

56. Due to the intentional nature of Pure Assay's acts, this is an exceptional case in which ThermoLife is entitled to treble damages, attorneys' fees and costs pursuant to 35 U.S.C. §§284 and 285.

57. Pursuant to 35 U.S.C. §284, ThermoLife is entitled to: an accounting by Pure Assay's funds comprising all revenues received through the commercial exploitation of Infringing Products; the imposition of a constructive trust for the benefit of ThermoLife for all such funds in the custody or control of Pure Assay; and to such other damages to which ThermoLife may be determined to be entitled.

## COUNT III — CONTRIBUTORY PATENT INFRINGEMENT

58. ThermoLife repeats and realleges each and every allegation contained in the foregoing paragraph of this Complaint, as if fully set forth herein.

59. This cause of action arises under the Patent Laws of the United States, Title 35, United States Code, in particular under 35 U.S.C. §271(c).

60. The '074 is a valid and enforceable patent.

61. Upon information and belief, Pure Assay is liable for contributory infringement, pursuant to 35 U.S.C. §271(c), in that Pure Assay has imported, made,

and/or sold within the United States a component of a patented combination or composition, consisting of a material part of the invention, knowing the same to be especially made or adapted for use in the infringement of the '074 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use.

62. Pure Assay's infringing conduct is willful, intentional and unlawful and, upon information and belief, will continue unless enjoined by this Court.

63. ThermoLife has no adequate remedy at law for the harm caused by Pure Assay's acts.

64. By reason of Pure Assay's acts complained of herein, ThermoLife has suffered monetary damages in an amount that has not yet been determined, but upon information and belief, is substantially in excess of the sum or value of $75,000, exclusive of interest and costs.

65. Due to the intentional nature of Pure Assay's acts, this is an exceptional case in which ThermoLife is entitled to treble damages, attorneys' fees and costs pursuant to 35 U.S.C. §§284 and 285.

66. Pursuant to 35 U.S.C. §284, ThermoLife is entitled to: an accounting by Pure Assay's funds comprising all revenues received through the commercial exploitation of Infringing Products; the imposition of a constructive trust for the benefit of ThermoLife for all such funds in the custody or control of Pure Assay; and to such other damages to which ThermoLife may be determined to be entitled.

## **JURY TRIAL DEMAND**

1. Plaintiff requests trial by jury on all aspects of the Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ThermoLife International LLC prays for relief and judgment against Defendant Pure Assay as follows:

A. For a judicial determination and declaration that the '074 Patent is valid and enforceable;

B. That a preliminary and permanent injunction issue against defendant, its agents, officers, directors, employees, attorneys, successors and assigns, all parent and subsidiary entities, and all those acting for or on the behalf of defendant, or in active concert, participation, or combination with them, including customers and distributors, prohibiting defendant from:

   i. continuing acts of infringement of ThermoLife's '074 Patent;

   ii. making, using, selling and/or importing Infringing Products, to include any colorable imitation thereof; and

   iii. otherwise infringing upon ThermoLife's patents.

C. That an Order issue from this Court requiring Pure Assay, its officers, agents, servants and employees, to deliver up to this Court for destruction all articles and materials infringing upon the rights of ThermoLife and all formulations and other matter or materials for reproducing such Infringing Products;

D. That Pure Assay be required to file with the Court within thirty (30) days after entry of an injunctive order or final judgment a written statement under oath setting forth the manner in which Pure Assay has complied with the order or final judgment;

E. Awarding ThermoLife its damages sustained due to Pure Assay's infringement of the '074 Patent;

F. In the alternative, ordering Pure Assay to pay ThermoLife all profits, gains, and advantages Pure Assay has received or obtained from their unlawful conduct, in an amount to be determined at trial;

G. In the alternative, that a reasonable royalty for Pure Assay's infringement be awarded to ThermoLife pursuant to 35 U.S.C. §284;

H. That, due to Pure Assay's willful infringement of ThermoLife's patent rights, Pure Assay be ordered to pay ThermoLife treble damages pursuant to 35 U.S.C. §284;

I. That, due to Pure Assay's willful and flagrant disregard of ThermoLife's patent rights, Pure Assay be ordered to pay ThermoLife's reasonable attorneys' fees and experts' fees pursuant to 35 U.S.C. § 285;

J. An award of the costs of this action, including pre- and post-judgment interest, pursuant to 35 U.S.C. §284;

K. For punitive damages in an amount sufficient to deter Pure Assay from future wrongful and outrageous conduct;

L. For such other and further relief as this Court deems necessary, just and proper under the circumstances.

RESPECTFULLY SUBMITTED this 20th day of January, 2012.

KERCSMAR & FELTUS PLLC

By: s/ *Gregory B. Collins*
    Gregory B. Collins
    Jenessa G. B. Coccaro
    6263 North Scottsdale Road, Suite 320
    Scottsdale, Arizona 85250
    *Attorneys for Plaintiff ThermoLife International LLC*